IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY, KANSAS

| | | |
|---|---|---|
| ALEJANDRO MORALES RENTERAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.  23-cv-1073 |
| | ) | |
| JNB TRANSPORT, LLC, | ) | |
| BLUE FREIGHT LOGISTICS, INC., | ) | |
| AND LUIS ORLANDO GUTIERREZ- | ) | |
| GUEVARA | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, by and through counsel Jeffrey A. Wilson and Patrick A. Turner of DeVaughn James Injury Lawyers, and for Plaintiff's claims against the Defendants, alleges and states:

## NATURE OF THE ACTION

1. At approximately 6:19 am on April 4, 2023, Alejandro Morales Renteral was Westbound on U.S. Highway 54 in Wichita, Kansas approaching the intersection with South 135th Street West. He was driving a tractor trailer loaded with bottled water.

2. As he approached, the traffic signal in front of him was red and he began slowing down to stop for the light.

3. As he was either almost at a complete stop or at a complete stop, Luis Orlando Gutierrez-Guevara, who was also operating a tractor-trailer Westbound on U.S. Highway 54, slammed into the back of Mr. Renteral's trailer at approximately 61 miles per hour.

4. Gutierrez-Guevara neither hit the brakes nor took any evasive action before impact.

5. The impact tore open Mr. Renteral's trailer and severely bent the underride bar at the rear of the trailer.

6.  The impact caused Mr. Renteral's tractor trailer to roll forward approximately 200 yards while Mr. Renteral was knocked unconscious.

7.  After regaining consciousness, Mr. Renteral was able to stop his tractor trailer.

8.  Mr. Renteral was severely injured in the crash.

9.  There was nothing Mr. Renteral could have done to avoid or minimize the crash and the damages resulting therefrom.

10.     At the time of the crash, Luis Orlando Gutierrez-Guevara was operating the tractor-trailer in the course and scope of his employment and/or agency with Blue Freight Logistics, Inc. and JNB Transport, LLC.

## PARTIES, JURISDICTION, AND VENUE

11.     Plaintiff is a citizen of the State of Arizona, and is domiciled at 14230 N.19th Ave Apt #191, Phoenix, Arizona 85023.

12.     Defendant JNB Transport, LLC ("JNB") is a limited liability company organized in the State of California.

13.     Upon information and belief, being documents filed with the California Secretary of State, JNB has one member, Jorge Luis Blanco, who is domiciled at 1928 Chestnut Creek Rd, Diamond Bar, California 91765. Therefore, JNB is not a citizen of Arizona.

14.     JNB may be served through its resident agent, Jorge Luis Blanco, 401 S. Main Street, Suite 101, Pomona, California 91766.

15.     At all relevant times, JNB was and is engaged in business as an interstate motor carrier transporting goods for compensation and does business in Kansas.

16.     Defendant, Blue Freight Logistics, Inc. ("Blue Freight"), is a for-profit corporation, incorporated in the State of California with its principal place of business in the State of California. Therefore, it is not a citizen of Arizona.

17.     Blue Freight may be served through its registered agent, Katie Chuong, at 14662 Marist Lane, Rancho Cucamonga, CA 91730.

18.     At all relevant times, Blue Freight was and is engaged in business as an interstate motor carrier transporting goods for compensation and does business in Kansas.

19.     Defendant Luis Orlando Gutierrez-Guevara's domicile is 13520 Foothill Blvd., Apt. 108, Sylmar, CA 91342. Therefore, he is not a citizen of Arizona. Gutierrez-Guevara may be served with legal process at his address above.

20.     Defendants are subject to jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1332, 28 U.S.C. §1391(b) and other applicable law.

21.     This action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship.  The matter is in excess of the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

22.     This Court has subject matter jurisdiction over the claims asserted in this Complaint.

23.     There is complete diversity among the parties as the Plaintiff is not a citizen of the same state as any Defendant.

**OPERATIVE FACTS**

24.     In the morning of April 4, 2023, the weather was clear and U.S. Highway 54 in Wichita, Kansas was dry.

25.     At or about 6:23 am, while it was still dark out, the tractor-trailer driven by

Gutierrez-Guevara was barreling down U.S. Highway 54 Westbound and approaching stopped or slowing traffic ahead.

26.     At that time, Gutierrez-Guevara was staring at an electronic device to his right in the cab and also eating a salad while driving. This caused him to be distracted while driving.

27.     Upon information and belief, Gutierrez-Guevara was either reading or sending a communication on a portable electronic device attached to the dash with Velcro at the time of the collision.

28.     In the alternative, Gutierrez-Guevara was watching a movie or otherwise viewing recreational materials.

29.     In the dashcam footage from the collision, which also shows Gutierrez-Guevara, it can be seen that Gutierrez-Guevara is looking at this device to his right.

30.     Then, he looks up briefly to the road in front of him. At that moment, Plaintiff's truck can be seen along with Plaintiff's brake lights, and the distance between Gutierrez-Guevara and Plaintiff is rapidly closing.

31.     Gutierrez-Guevara, instead of hitting the brakes or taking evasive action, turns back to the electronic device.

32.     Gutierrez-Guevara never attempted to brake or attempted any maneuver to avoid a collision before plowing into Mr. RExpected.

32.     Gutierrez-Guevara never attempted to brake or attempted any maneuver to avoid a collision before plowing into Mr. Renteral.

33.     Mr. Renteral sustained severe injuries as a proximate result of the collision.

34.     Mr. Renteral was an innocent victim who in no way contributed to causing the collision or any injury to himself on April 4, 2023. There was nothing he could do to avoid or minimize the collision or any of the damages resulting therefrom.

35.     At the time of the collision, Gutierrez-Guevara was an agent and/or employee of Defendant JNB.

36.      At the time of the collision, Gutierrez-Guevara was acting in the course and scope of his employment with JNB and in the furtherance of the business of JNB.

37.      At the time of the collision, Gutierrez-Guevara was an agent and/or employee of Blue Freight.

38.      At the time of the crash, Gutierrez-Guevara was acting in the course and scope of his employment with Blue Freight.

39.      The tractor-trailer driven by Gutierrez-Guevara on April 4, 2023 was owned by JNB.

40.      Upon information and belief, Gutierrez-Guevara was operating on behalf of Blue Freight at the time of the collision under a lease agreement between Blue Freight, lessee, and JNB, lessor.

41.      The collision was caused by the negligence of Gutierrez-Guevara, JNB, and Blue Freight.

42.      The collision was foreseeable to Gutierrez-Guevara, JNB, and Blue Freight and could have been avoided had Gutierrez-Guevara acted in a safe and prudent manner as required by Kansas law and in accordance with the standards required of professional truck drivers and motor carriers.

43.      At the time of the subject crash, Gutierrez-Guevara had a duty to drive in conformance with the Federal Motor Carrier Safety Regulations and Kansas law as well as the industry and corporate standards and guidelines emanating from these safety regulations and Kansas law, including but not limited to, the Required Knowledge and Skills set forth in 49 CFR Sections 383.11 and 383.113 as well as the mandates of 49 CFR Sections 390-395.

44.      As a direct and proximate result of the Defendants' negligence, Mr. Renteral suffered severe injuries and has endured and will endure physical and mental pain and suffering

and mental anguish.

## LIABILITY OF DEFENDANTS

### COUNT ONE

### (Gutierrez-Guevara's Negligence)

45.     All previous paragraphs and allegations are incorporated herein.

46.     Defendant Gutierrez-Guevara had a duty to operate his commercial vehicle in a safe and prudent manner in accordance with his training as a professional commercial motor vehicle driver and so as not to endanger the welfare of Mr. Renteral and the motoring public. This duty included keeping a proper lookout, paying attention, keeping a safe distance from vehicles in front of him, and operating his commercial vehicle at a reasonable and prudent speed in accordance with the conditions of the roadway and all traffic laws and regulations.

47.     As a professional truck driver, Defendant Gutierrez-Guevara also had a duty to operate his tractor-trailer in accordance with the standards required of commercial vehicle drivers and in accordance with the required skills and knowledge set forth in 49 CFR Sections 383.111 and 383.113; the mandates of 49 CFR Sections 390-395; and industry and corporate standards and guidelines that emanate from these safety regulations.

48.     As a professional truck driver subject to the Federal Motor Carrier Safety Regulations, Defendant Gutierrez-Guevara also had a duty not to operate any commercial motor vehicle while distracted. This includes a duty not to eat while driving and a duty not to use distracting electronic devices while driving.

49.     Defendant Gutierrez-Guevara breached those duties and is liable for his tortious acts and omissions, which include, but are not limited to, the following:

      a.   Failing to keep a lookout for vehicles and traffic ahead;

      b.   Failing to perform a proper visual search;

c.   Failing to properly manage his space;

d.   Following too closely;

e.   Failing to yield the right of way to vehicles in front of him on the roadway;

f.   Failing to drive at a safe and reasonable speed under the conditions;

g.   Failing to drive defensively;

h.   Operating a motor vehicle while distracted;

i.   Failing to operate the vehicle in a safe and prudent manner, thereby placing the well-being of the public in general, and Mr. Renteral in particular, in danger;

j.   Failing to adhere to safe driving principles expected of professional drivers;

k.   Failing to operate the truck in accordance with generally accepted safety principles for professional drivers and/or the commercial motor vehicle industry;

l.   Failing to operate the truck in a safe and prudent manner in view of the conditions that existed at the time of the subject collision;

m.   Otherwise failing to act reasonably and prudently as a professional driver should under the circumstances; and

n.   Such other specifications of negligence that shall be added by amendment or proven at trial.

50.   As a result of the foregoing breaches of duties, Mr. Renteral suffered the losses and injuries described herein.

51.   Alone or in conjunction with the negligence of the other Defendants, Defendant Gutierrez-Guevara's negligence proximately caused the injuries to Mr. Renteral.

52.   Defendant Gutierrez-Guevara is liable to Plaintiff for all damages allowed by law for the injuries, damages and losses sustained by Plaintiff as a result of his negligence.

## COUNT TWO

### (Punitive Damages Against Gutierrez-Guevara)

53.      All previous paragraphs and allegations are incorporated herein.

54.      Gutierrez-Guevara holds a class A commercial driver's license issued in the state of California.

55.      To obtain such a license and become a professional driver, Gutierrez-Guevara had to study the California commercial driver's license manual ("CDL manual") and then pass written and skills tests to demonstrate he knew how to drive safely.

56.      The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[t]o be a safe driver you need to know what is going on all around your vehicle."

57.      The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[n]ot looking properly is a major cause of accidents."

58.      The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[b]ecause stopping or changing lanes can take a lot of distance, knowing what the traffic is doing on all sides of you is very important. You need to look well ahead to make sure you have room to make these moves safely."

59.      The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him to "[w]atch for brake lights from slowing vehicles."

60.      The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[a] driving distraction is anything that takes your attention away from driving. Whenever you are driving a vehicle and your full attention is not on the driving task, you are putting yourself, your passengers, other vehicles, and pedestrians in

8

danger. Distracted driving can cause accidents, resulting in injury, death, or property damage."

61.     The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[a]ctivites that can distract your attention include: … eating [and] … using any type of telematics or electronic devices."

62.     The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[a]pproximately 5,500 people are killed each year on U.S. roadways and an estimated 448,000 are injured in motor vehicle accidents involving distracted driving."

63.     The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[e]ffects of distracted driving include slowed perception, which may cause you to be delayed in perceiving or completely fail to perceive an important traffic event. Delayed decision making and improper action can cause you to be delayed in taking the proper action or make incorrect inputs to the steering, accelerator, or brakes."

64.     The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[y]our primary responsibility is to operate a motor vehicle safely. To do this, you must focus your full attention on the driving task."

65.     The California CDL manual that Gutierrez-Guevara studied to become a licensed professional driver advised him that "[i]f drivers react a half-second slower because of distractions, accidents double. Some tips to follow so you will not become distracted: … Avoid smoking, eating, and drinking while you drive."

66.     At the time of the crash, Gutierrez-Guevara was fully aware of the fact that using an electronic device or eating while driving could distract him.

67.     At the time of the crash, Gutierrez-Guevara was fully aware that distracted driving puts the motoring public in danger of serious injury or death.

68.     At the time of the crash, Gutierrez-Guevara was fully aware that many people are injured or die each year as a consequence of distracted driving.

69.     At the time of the crash, Gutierrez-Guevara was fully aware that the chances of being involved in a crash doubled if his reaction time was slowed by even a half of one second.

70.     Despite this knowledge, Gutierrez-Chavez was using an electronic device and staring at it in the moments before the crash.

71.     Despite this knowledge, and despite briefly looking up and seeing Plaintiff's trailer rapidly approaching, Gutierrez-Guevara chose to look back at his electronic device instead of braking or taking evasive action.

72.     Despite this knowledge, Gutierrez-Guevara chose to not only eat while driving but to specifically eat a salad with a fork—an act that requires the use of *both* hands.

73.     A photo of the remains of the salad along with the fork taken at the inspection of Gutierrez-Guevara's truck on April 25, 2023 is below:



74.     Under these facts, Gutierrez-Guevara made his choice to use an electronic device and to use both hands to eat a salad while driving in reckless disregard for those acts' creation of an imminent danger to the motoring public around him—a danger he was instructed on and was fully aware of.

75.     Gutierrez-Guevara's willful and wanton conduct proximately caused severe injury to Plaintiff.

## COUNT THREE

### (*Respondeat Superior* Against JNB and Blue Freight)

76.     All previous paragraphs and allegations are incorporated herein.

77.     At all times material hereto, Defendant Gutierrez-Guevara was acting within the course and scope of his employment or agency with Defendants JNB and Blue Freight and was furthering the business interests of Defendanta JNB and Blue Freight.

78.     Defendants JNB and Blue Freight are liable under the doctrine of *respondeat superior* and the rules of agency for the tortious acts and omissions of their agents, employees, members, representatives, servants, or contractors.

79.     These acts and omissions include, but are not limited to, the acts and omissions committed by Defendant Gutierrez-Guevara on April 4, 2023, which are described above and were committed within the course and scope of his agency or employment with Defendants JNB and Blue Freight.

80.     As a result of the foregoing breaches of duties, Mr. Renteral suffered the losses and injuries noted herein.

81.     Defendants JNB's and Blue Freight's negligence proximately caused the injuries to Mr. Renteral.

82.     Defendants JNB and Blue Freight are liable to Plaintiff for all damages allowed by

law for the injuries and losses sustained by Plaintiff as a result of the negligence of Defendant Gutierrez-Guevara and/or their own independent negligence.

## COUNT FOUR

### (JNB's and Blue Freight's Negligence)

83.     All previous paragraphs and allegations are incorporated herein.

84.     JNB is a motor carrier and operating under authority through the United States Department of Transportation with an assigned D.O.T. number of 1485609.

85.     Blue Freight is a motor carrier and operating under authority through the United States Department of Transportation with an assigned D.O.T. number of 3962098.

86.     The truck being operated by Defendant Gutierrez-Guevara was owned, maintained, dispatched, supervised, controlled and repaired by JNB and/or Blue Freight and was used as a commercial motor vehicle in both intrastate and interstate business making it subject to the Federal Motor Carrier Safety Administration regulations under 49 C.F.R. Sections 381 *et. seq*.

87.     49 C.F.R. § 390.3(e)(1)-(2) and K.A.R. 82-4-3f(a)(1)(E)-(F) provide that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

88.     JNB and Blue Freight was at all material times a "motor carrier" and an "employer" of its driver Gutierrez-Guevara in regard to the operation of a commercial motor vehicle as defined in 49 C.F.R. §390.5 and K.A.R. 82-4-3f.

89.     49 C.F.R. § 392.2 and K.A.R. 82-4-3h provide that every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated—in this case, Kansas.

90.     The FMCSRs are located at 49 C.F.R. § 390 *et seq*. The FMCSRs set forth the applicable minimum industry standard of care including the minimum qualifications for drivers and the minimum duties for drivers under 49 C.F.R. § 391.1(a) & (b).

91.     The FMCSRs are adopted by Kansas law and regulations at K.S.A. 66-1,129 and K.A.R. 82-4-1, *et seq*.

92.     JNB and Blue Freight hired, supervised, and trained Gutierrez-Guevara.

93.     JNB and Blue Freight failed to ensure that Gutierrez-Guevara was trained on the dangers of nighttime driving, the dangers of distracted driving, and the dangers of using electronic devices.

94.     JNB and Blue Freight had the capability to monitor its driver through an installed driver-facing dash camera, and further had the opportunity to employ features of such camera that would automatically alert it when its drivers were driving distracted or otherwise driving unsafe.

95.     JNB and Blue Freight chose not to utilize these measures as a cost cutting measure.

96.     JNB and Blue Freight failed to monitor Gutierrez-Guevara' driving to ensure he did not use electronic devices while driving and did not eat while driving.

97.     JNB and Blue Freight failed to properly train and supervise Gutierrez-Guevara as a cost cutting measure.

98.     JNB and Blue Freight consciously failed to comply with certain federal safety regulations in training and supervising its drivers.

99.     JNB and Blue Freight failed to inform Gutierrez-Guevara of the requirements of the FMCSRs.

100.    JNB's and Blue Freight's failure to use reasonable care in hiring, retaining, supervising, and training its drivers was the proximate cause of Plaintiff's injuries.

101.    JNB and Blue Freight further failed to use reasonable care in that they:

a.   Failed to train Gutierrez-Guevara;

b.   Failed to supervise Gutierrez-Guevara;

c.   Failed to educate Gutierrez-Guevara on the requirements of the FMCSRs

102.     As a result of JNB's and Blue Freight's negligence and their employee/agent Gutierrez-Guevara, Plaintiff sustained serious bodily injury, medical expenses, lost wages and has incurred non-economic damages such as pain and suffering.   Furthermore, plaintiff reasonably expects to incur future medical expenses, future lost wages and future non-economic damages such as pain, suffering, and mental anguish.

103.     Alone or in conjunction with the negligence of the other Defendants, Defendants JNB and Blue Freight's negligence proximately caused the injuries to Plaintiff.

## COUNT FIVE

### (All Defendants' *Negligence Per Se* and Attorney Fees)

104.     All previous paragraphs and allegations are incorporated herein.

105.     Defendants routinely undertake to haul property from place to place for persons or entities that may choose to employ them.

106.     Defendants are therefore "public motor carrier[s] of property" under K.S.A. 66-1,108(e).

107.     This makes Defendants "common carriers within the meaning of the public utility laws of this state." K.S.A. 66-1,110.

108.     JNB and Blue Freight also qualify as common carriers under K.S.A. 66-105 as they are entities operating for public use in the conveyance of property within this state.

109.     K.S.A. 66-176 provides that "[a]ny … common carrier which violates any of the provisions of law for the regulation of … common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, the actual damages sustained by the party

aggrieved, together with the costs of suit and reasonable attorney fees, to be fixed by the court."

110.     K.S.A. 66-176 creates a private cause of action against common carriers for violations of any of the laws or regulations applicable to a common carrier that causes injury.

111.     The Defendants' actions and inactions, as described above, violated the following provisions of law for the regulation of common carriers:

    a.  49 C.F.R. § 392.2 and K.A.R. 82-4-3h (violating the laws ordinances and regulations of Kansas);

    b.  49 C.F.R. § 390.3(e)(1)-(2) and K.A.R. 82-4-3f(a)(1)(E)-(F) (failure to supervise, instruct, monitor, and train);

    c.  K.S.A. 66-1,129(c);

    d.  K.S.A. 8-1523 (following too closely);

    e.  K.S.A. 8-1566 (reckless driving);

    f.  K.S.A. 8-12,111 (use of an electronic device to read or send communications while driving);

    g.  Wichita Municipal Ordinance 11.38.170 (careless driving);

    h.  Wichita Municipal Ordinance 11.38.175 (inattentive driving);

    i.  Wichita Municipal Ordinance 11.38.260 (following too closely);

    j.  Wichita Municipal Ordinance 11.38.360 (use of electronic device to watch a movie or other recreational material);

    k.  Wichita Municipal Ordinance 11.38.390 (unlawful text messaging).

112.     These violations proximately caused Plaintiff severe injuries and damages.

113.     Defendants are therefore liable for attorney fees in this action, in addition to compensatory damages and costs.

## COUNT SIX

**(Punitive Damages against JNB and Blue Freight)**

114.    All previous paragraphs and allegations are incorporated herein.

115.    Gutierrez-Guevara has not been disciplined or reprimanded for his willful and wanton actions to date.

116.    Gutierrez-Guevara's conduct was authorized by the corporate policies of JNB and Blue Freight, and also by the general practices of JNB and Blue Freight.

117.    JNB and Blue Freight purposefully chose not to conduct a full investigation of Gutierrez-Guevara's actions in this crash, and purposefully chose not to look at or seek information that may shed light on the nature of Gutierrez-Guevara's actions. This includes but is not limited to their choice to not recover or inspect the electronic device Gutierrez-Guevara was looking at before the crash to determine exactly what he was doing.

118.    Persons at JNB and Blue Freight, namely the president of each entity and those in a supervisory position over Gutierrez-Guevara have ratified and approved of his conduct since the date of the collision.

119.    Furthermore, JNB and Blue Freight knew or should have known that Gutierrez-Guevara had a habit of driving while eating and driving while using electronic devices, as described above.

120.    As members of the trucking industry who are familiar with the laws and regulations governing motor carriers and their drivers, JNB and Blue Freight were fully aware of the hazards associated with Gutierrez-Guevara's habitual conduct while driving.

121.    Despite this knowledge, JNB and Blue Freight took no action to correct, curb, or instruct Gutierrez-Guevara to act differently.

122.    As such, JNB and Blue Freight, as entities, acted in a willful and wanton manner by recklessly disregarding the imminent danger posed by Gutierrez-Guevara's habits.

123.     Their willful and wanton conduct was the proximate cause of severe injuries to Plaintiff and other damages.

124.     Therefore, JNB and Blue Freight are liable for punitive damages in this action—both for the conduct of Gutierrez-Guevara, and independently of his conduct.

WHEREFORE, Plaintiff prays for judgment against defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for his attorney fees, for costs herein, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

DeVaughn James Injury Lawyers


By: /s/ Jeffrey A. Wilson
Jeffrey A. Wilson, #26527
Patrick A. Turner, #23437
3241 N. Toben
Wichita, KS 67226
316-888-8888 [t]
316-425-0414 [f]
jeffwilson@devaughnjames.com
pturner@devaughnjames.com
*Attorneys for Plaintiffs*


## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

COMES NOW the plaintiff and demands a pretrial conference and trial by a jury in this matter.


## DESIGNATION FOR PLACE OF TRIAL

COMES NOW the plaintiff and designates Kansas City, Kansas as the place for trial of this matter.


By: /s/ Jeffrey A. Wilson
Jeffrey A. Wilson, #26527
Patrick A. Turner, #23437
3241 N. Toben
Wichita, KS 67226
316-888-8888 [t]
316-425-0414 [f]
jeffwilson@devaughnjames.com
pturner@devaughnjames.com
*Attorneys for Plaintiffs*